# IN THE COURT OF APPEALS OF IOWA

No. 25-1190
Filed October 15, 2025

**IN THE INTEREST OF B.L.,**
**Minor Child,**

**B.H., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Linn County, Carrie K. Bryner, Judge.

A mother appeals the termination of her parental rights to her son. **AFFIRMED.**

Ellen Ramsey-Kacena, Assistant Public Defender, Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Julia F. Trachta of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor child.

Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**TABOR, Chief Judge.**

The juvenile court terminated Brittany's parental rights to her son B.L. under Iowa Code section 232.116(1) (2024), paragraphs (e) and (f).[1] Brittany makes three arguments on appeal. First, she contends that placing B.L. in a guardianship would have been a less-restrictive permanency option. Second, she argues termination is not in B.L.'s best interests. Third, she asks us to apply the exceptions to termination under Iowa Code section 232.116(3), paragraphs (a) and (c). After reviewing the facts and considering the issues raised by the mother, we affirm the juvenile court's termination ruling.[2]

## I. Facts and Prior Proceedings

Brittany has two children, B.L. and L.L. They are half siblings. B.L.'s father was absent from most of the proceedings. Brittany is married to Anthony; they have no children together. Brittany's family came to the attention of the Iowa Department of Health and Human Services in July 2023 over concerns that she had methamphetamine in the car she used to transport her children.

In October 2023, the juvenile court adjudicated B.L. and L.L. as children in need of assistance (CINA) and ordered Brittany to drug test four times per month. When Brittany did not comply with those drug-testing expectations, B.L. was removed from her custody and placed with L.L.'s father, Jesse. L.L. also resides with Jesse under a bridge order. B.L. has stayed there since the siblings' removal.

---

[1] The court also terminated the rights of B.L.'s father under Iowa Code section 232.116(1), paragraphs (b), (e), and (f). He does not appeal.

[2] We review termination-of-parental-rights proceedings de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.*

Throughout the CINA case, Brittany was scheduled to drug test at least 107 times but failed to attend eighty-three appointments. Of the tests performed, most were positive for methamphetamine.[3] Recognizing her need for treatment, Brittany began three programs but did not complete any of them. At the termination trial she claimed to be sober for seventy-one days, but she tested positive for methamphetamine one month earlier.

Beyond substance use, Brittany faced other challenges. The department was particularly concerned about her mental wellbeing and that she did not protect herself from a violent relationship with Anthony. Brittany reported a history of domestic abuse yet asked Anthony to drive her to treatment despite having other people available to take her. She also requested the dismissal of a criminal no-contact order against him. At trial, the caseworker testified that Brittany lacked insight into how domestic abuse was affecting her, and that she was unable to impose boundaries to keep her children safe. As for her mental health, Brittany acknowledged being diagnosed with bipolar disorder, attention-deficit/hyperactivity disorder, depression, and anxiety. She did not seek mental-health treatment because she was worried that her personal information would be shared and used against her. But she did take medication.

On the positive side, Brittany has a close bond with B.L. He is on the autism spectrum, and Brittany appreciates his interests and caters to them.[4] B.L. enjoys

---

[3] Of the four sweat patches returned, three were positive for methamphetamine and one for cocaine. Of the eleven urinalysis tests, four were negative, two she did not produce urine, and five were positive for methamphetamine. Brittany testified she did not attend the testing because she was using.

[4] For example, B.L. likes vacuum cleaners, so Brittany gives him chances to work on and talk about vacuum cleaners. Brittany also built her children a clubhouse.

family time and snuggles with his mother. In contrast, B.L. does not have a relationship with his father and instead views Jesse in that role. Jesse takes care of B.L. and understands his medical and mental-health needs. Jesse helped facilitate contact between B.L. and Brittany while Brittany was at a treatment facility. Brittany asked for Jesse to become B.L.'s guardian, but Jesse had concerns about the lack of permanency in a guardianship. He expressed that Brittany has "used [B.L.] against him" in the past and is worried she will do so again. Jesse would prefer to adopt B.L.

After trial, the juvenile court terminated Brittany's parental rights to B.L. under Iowa Code section 232.116(1)(e) and (f).[5] Brittany appeals.

---

[5] Iowa Code section 232.116(1)(e) permits termination when:
> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
> (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so.

Iowa Code section 232.116(1)(f) permits termination when:
> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

## II.  Analysis

We review termination proceedings in three steps.  *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021).  First, we evaluate whether the State has proven a statutory ground for termination under Iowa Code section 232.116(1).  *Id.*  Second, we assess whether termination is in the child's best interests under section 232.116(2).  *Id.*  Third, we consider whether any exceptions in section 232.116(3) preclude termination.  *Id.*  Brittany does not contest the first step.  Instead, she argues that termination is not in B.L.'s best interests and that an exception applies.  She also contends that a guardianship would be a less restrictive permanency option for B.L.  We address the guardianship issue first.

### A.  Is guardianship the preferred permanency option for B.L.?

Generally, "a guardianship is not a legally preferable alternative to termination."  *A.S.*, 906 N.W.2d at 478 (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)).  Guardianships often provide less stability because they can be changed or terminated.  *In re A.M.*, No. 20-1008, 2020 WL 7021576, at *3 (Iowa Ct. App. Nov. 30, 2020).  That is not to say that establishing a guardianship is never the solution.  A guardianship may be appropriate where the parent and guardian "have a close, mature, and healthy relationship that is free of conflict" and it is evident they "can work together in the best interests of the child."  *In re W.M.*, 957 N.W.2d 305, 315 (Iowa 2021) (quoting *B.T.*, 894 N.W.2d at 34).

Brittany's relationship with Jesse does not fall into that mature and healthy category.  Brittany has not shown an ability to work with Jesse in B.L.'s best interests.  According to the case manager, Brittany has used the fact that Jesse is not B.L.'s biological father to drive a wedge between them.  And, at times during

her testimony, Brittany criticized Jesse's approach to letting her see the boys. In her words, "[I]f I don't do what Jesse wants when Jesse wants or I don't take his crap, then I don't get to communicate with my kids." Thus, it is clear their relationship is not free of conflict, and Jesse did not favor guardianship over adoption. For these reasons, we decline to find that guardianship was the appropriate permanency option for B.L.

## B. Is it in B.L.'s best interests to terminate Brittany's parental rights?

In determining whether termination of parental rights is in a child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Relevant considerations include the "mental capacity of a parent and the existence of a pre-adoptive foster family in the life of a child." *In re D.W.*, 791 N.W.2d 703, 708 (Iowa 2010). "We cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.S.*, 906 N.W.2d at 474 (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)).

Brittany emphasizes that B.L.'s autism will make it more challenging for him to adjust to life without his mother, particularly because she has visitation rights with B.L.'s half-brother, L.L. While it may be a challenging adjustment, B.L. will remain with his half-brother and Jesse, who he considers his father. Jesse is willing to adopt B.L., provide him with stable care, and allow him to visit Brittany on the same schedule that Brittany visits L.L.

On the other hand, Brittany has not fully addressed her mental health or shown insight into the risk that domestic violence posed to her children. Although she testified that she was on a waiting list for care at Abbe Center, she has resisted opening up to a therapist. And her sobriety remained a top concern, as she tested positive for cocaine in the month before the trial. Given these persistent parenting deficiencies, termination of her legal relationship with B.L. is in his best interests.

## C. Do any exceptions apply to preclude termination?

Brittany contends that the exceptions in paragraphs (a) and (c) of Iowa Code section 232.116(3) apply to preclude termination.[6] These sections allow courts to preserve the parent-child relationship when "a relative has legal custody of the child" or when "there is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(a), (c). These exceptions are permissive, rather than mandatory. *A.S.*, 906 N.W.2d at 475. In deciding whether to apply these factors, we consider "the unique circumstances of each case and the best interests of the child." *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016)).

We first address custody with a relative. "An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child. The child's best interests always

---

[6] In its response to the petition on appeal, the State did not contest error preservation on this issue, arguing that the court "properly declined to apply an exception based on parent child bond or relative placement." But we do not see that the juvenile court addressed Iowa Code section 232.116(3) in its ruling. That said, we assume without deciding that error was preserved on these claims.

remain the first consideration." *Id.* (quoting *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997)).  It is Brittany's burden to prove this exception applies.  *See id.* at 476.  As we found in rejecting Brittany's guardianship argument, placing B.L. in Jesse's custody without terminating Brittany's parental rights is not in B.L.'s best interests.

As for the closeness of the parent-child relationship, we agree that the record shows a strong bond between B.L. and Brittany.  But we do not find clear and convincing evidence that severing that bond would be detrimental to B.L. given all the circumstances.  B.L. has lived with Jesse for over a year.  Jesse cares for him and accommodates his special needs.  What's more, Jesse intends to permit Brittany to visit B.L., so Brittany will remain in his life.

For these reasons, we find no exception applies to preclude termination.

**AFFIRMED.**